UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. __:_____-CV-_____-__

| | |
|---|---|
| MICHAEL MOTSINGER, DAVID WILSON, and RONALD CORREIA, individually and on behalf of the Plan Participants of the Morris & Associates, Inc. Employee Stock Ownership Plan, <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM MORRIS III, MORRIS & ASSOCIATES, INC., a North Carolina Corporation, and THE ADMINISTRATIVE COMMITTEE OF MORRIS & ASSOCIATES, INC., <br><br> Defendants. | CLASS ACTION COMPLAINT |

**COMPLAINT**

1. Plaintiffs Michael Motsinger, David Wilson, and Ronald Correia, by and through counsel, bring this action individually and on behalf of all Plan Participants who sold shares of Morris & Associates, Inc. in their Plan accounts during the relevant period, for the purpose of obtaining relief from Defendants Morris & Associates, Inc. ("Morris" or the "Company"), the Administrative Committee of Morris (the "Committee"), and William Morris III, member of the Committee, for refusal to pay benefits due under an employee benefits plan and other violations of the Employee Retirement Income Security Act of 1974.

1

## JURISDICTION AND VENUE

2. This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"). This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and original jurisdiction pursuant to 28 U.S.C. § 1331.

3. The ERISA statute, 29 U.S.C. § 1133, and the Department of Labor regulations, 29 C.F.R. § 2560.503–1, provide a mechanism for administrative or internal appeal of benefits denials. In this case, those avenues of appeal have been exhausted, and this matter is now properly before this Court for judicial review.

4. Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2) because the Plan is administered in this District, because some or all of the events or omissions giving rise to the claims occurred in this District, and because a defendant resides or may be found in this District. The Plan is administered in Garner, North Carolina, where Defendant Morris is headquartered.

## DEFENDANTS

5. Defendant Morris is the Plan Sponsor and Plan Administrator under the Plan (Sec. 2.07), and is located in Wake County, North Carolina.

6. The Plan Administrator is required under the Plan and under 29 C.F.R. § 2560.503–1(f)(1) to make a prompt determination about any claim submitted to it. Under § 13.11 of the Plan, the Plan Administrator must make its determination and furnish it to a claimant within thirty days, including "(i) the specific reason or reasons for the denial; (ii) specific references to pertinent Plan

2

provisions on which the denial is based; (iii) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and (iv) an explanation of the Plan's claim review procedure."

7.  Defendant Administrative Committee is a committee appointed by the Board of Directors of Morris to administer the Plan and to give instructions to the Trustee. Sec. 2.13. The Committee has sole responsibility of interpreting the provisions of the Plan, determining the rights of Participants and Beneficiaries under the Plan, directing the Trustee in the distribution of Trust assets, and administering the Plan in accordance with its terms. Sec. 11.03. Under Section 13.11 of the Plan, the Committee is required to "fully and fairly review the decision" of the Plan Administrator to deny any claim and to "make its decision regarding the merits of the claim promptly, and within thirty (30) days following the receipt by the Plan Administrator of the request for review" unless additional time is sought. The requirements in Section 13.11 parallel the requirements of ERISA. ERISA 503(2) (requiring "a full and fair review" of denied claims); 29 C.F.R. § 2560.503–1(h) (setting forth minimum requirements for a full and fair review). The Committee's decision must "set forth specific reasons for the decision, shall be worded in a manner calculated to be understood by the claimant, and shall cite specific references to the pertinent Plan provisions on which the decision is based." Plan Document Sec. 13.11.

8. Defendant William Morris III ("Bill Morris") is a member of the Plan's Administrative Committee and, upon information and believe, was the sole member of that Committee at the time Plaintiffs' Claims were denied through inaction.

9. Defendant William Morris III lives in Wake County, North Carolina.

## ADDITIONAL ACTORS

10. Randy Clapsadl is Bill III's son-in-law and is the Company's President. He was a Company officer throughout the Relevant Period, previously as the Company's Executive General Manager, Senior Vice President, and Chief Revenue Officer (CRO).

11. Randy Clapsadl is married to Sarah M. Clapsadl, a shareholder of Morris common stock, the Company's Secretary and Senior Accounting Manager, and the daughter of Bill Morris, who is himself the CEO and the second largest shareholder of Morris common stock, behind only the ESOP itself.

## PLAINTIFFS AND THEIR BENEFITS

12. Under the Plan, employees of Morris are compensated for their work, in part, by the award of shares of Morris in the ESOP.

13. Participants are allowed, and in some cases required, to sell their shares after they leave their employment at Morris, approach retirement age, or in certain limited other circumstances.

14. Because shares of Morris are not traded on a generally recognized market, they are valued annually and all participants selling ESOP shares the following year are paid the share price determined by the Trustee. Pursuant to the

Plan Document and the requirements of ERISA, the annual valuation must reflect "the fair market value as of the Valuation Date." Plan Document § 2.48 ("the Trustee shall value the Plan assets at their fair market value as of the Valuation Date") (attached hereto as Exhibit 1).

15. Fair Market Value is defined as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." *United States v. Cartwright*, 411 U.S. 546, 551 (1973); *Estate of Godley v. Comm'r of Internal Revenue*, 286 F.3d 210, 214 (4th Cir. 2002). Similarly, the Summary Plan Description requires that the "value of the Company Stock held by the ESOP reflects the earnings, assets, and growth of our Company".

16. Plaintiff Michael Motsinger sold approximately 2,052.8 shares in the ESOP on December 12, 2023 based on a share price that should have reflected the fair market value of Morris as of December 31, 2022.

17. Plaintiff Ronald Correia sold approximately 1,640 shares in the ESOP in December 2024 based on a share price that should have reflected the fair market value of Morris as of December 31, 2023.

18. Plaintiff Correia lives in Johnston County, North Carolina.

19. Plaintiff David Wilson sold approximately 927 shares in the ESOP in December 2024 based on a share price that should have reflected the fair market value of Morris as of December 31, 2023.

20. Plaintiff Wilson lives in Carteret County, North Carolina.

21. Plaintiffs bring this action on behalf of all participants who sold their shares based on the 2022, 2023 and 2024 Valuations.

## THE 2022 VALUATION

22. The 2022 Valuation was determined in 2023 based on the value of Morris on December 31, 2022.

23. The 2022 Valuation understated the fair market value of Plaintiffs' shares, predominantly because it did not include the value of Morris' largest asset at the time, its $56,529,203 in cash and cash equivalents. *Johns v. Morris*, No. 5:23-cv-324, Dkt No. 68-2 filed Dec. 16, 2024 (attached hereto as Exhibit 2). After excluding the value of the cash and cash equivalents, the 2022 Valuation calculated Morris' entire enterprise value as $24,047,000 and per share value as $234.60.

24. Cash has value. A dollar is worth a dollar. $56,529,203 in cash is worth $56,529,203.

25. If the cash had been valued, Morris would have been valued at over $80.5 million, producing a share price of $786.10 instead of $234.60.

## THE 2023 VALUATION

26. The 2023 Valuation was determined in 2024 based on the value of Morris on December 31, 2023.

27. The 2023 Valuation understated the fair market value of Plaintiffs' shares, predominantly because it did not include the value of Morris' largest asset at the time, its $71 million in cash and cash equivalents. Ex. 2. Excluding the value of Morris' cash position, shares were incorrectly valued at $360. Had the $71 million

6

been included in the 2023 Valuation, the valuation of each share of Morris stock would have been $1,052.67.

28. Cash has value. A dollar is worth a dollar. $71 million in cash is worth $71 million.

29. By valuing Morris without valuing Morris' cash, the share price was more than $692 lower than the fair market value, harming each Plaintiff and every other plan participant who sold shares at the 2023 Valuation.

## THE 2024 VALUATION

30. Upon information and belief, Defendants caused the 2024 valuation to exclude the value of cash and cash equivalents even though such assets should have been included in the valuation and would have increased the enterprise value by an amount at or near the cash value and the share price by approximately that amount less a 5% reduction for lack of marketability.

31. In particular, the Plan's 2024 Form 5500 filing with the United States Department of Labor reflected no increase in the share value of the ESOP's stock held between December 31, 2023, and December 31, 2024.

32. Because Morris' massive cash holdings were incorrectly excluded from the calculation of fair market value for the 2023 Valuation and because the 2024 Valuation appears to produce an identical share price as the 2023 Valuation, Plaintiffs reasonably contend that Morris' massive cash holdings were excluded from the 2024 Valuation.

7

## DENIAL OF PLAINTIFFS' CLAIM AND REVIEW

33. Section 13.11 provides that "[i]f a Participant or Beneficiary believes that he is entitled to benefits under the Plan which are not being paid to him… he may file a written claim with any officer of the Employer or any member of the Committee. Such claim shall be immediately referred to the Plan Administrator, and the Plan Administrator shall decide whether the claim shall be allowed or denied in whole or in part."

34. On March 7, 2025, Plaintiffs Motsinger and Correia filed claims pursuant to the Plan's claim procedures. On April 9, 2025, Plaintiff Wilson did likewise. All three claims were submitted to Randy Clapsdl, an officer of Morris, as required by the Plan.

35. Pursuant to Section 13.11, the Plan Administrator had thirty days to provide a ruling on the claim. The Plan Administrator never did so.

36. Pursuant to Section 13.11, following denial of a claim or lack of response to a claim, Plaintiffs were entitled to appeal to the Committee. "The Committee shall fully and fairly review the decision denying the claim" and was required, within 30 days, to "deliver the decision to the claimant in writing. Such decision shall set forth specific reasons for the decision, shall be worded in a manner calculated to be understood by the claimant, and shall cite specific references to the pertinent Plan provisions on which the decision is based."

37. Plaintiffs provided their appeal to the Committee on June 4, 2025 after they did not substantively respond to Plaintiffs' claims. The Committee did not

provide a substantive response to Plaintiffs' appeal at has never attempted to justify the decision not to include Morris' cash and cash equivalents in the 2022 and 2023 Valuations.

## CLASS ALLEGATIONS

38. In acting in this representative capacity and to enhance the due process protections of unnamed participants and beneficiaries of the Plan, as an alternative to direct individual actions on behalf of the participants and beneficiaries of the Plan under 29 U.S.C. § 1132(a)(2) and (3), Plaintiffs seek to certify this action as a class action on behalf of:

> **All current and former participants in the Plan who sold or redeemed shares of the Company in the ESOP based on the 2022, 2023 or 2024 Valuations. Excluded from the class are Defendants, Defendants' beneficiaries, and Defendants' immediate families.**

39. Class certification is appropriate under Fed. R. Civ. P. 23(a) and (b)(1), (b)(2), and/or (b)(3).

   (a) The class satisfies the numerosity requirement of Rule 23(a) because it is composed of approximately twenty persons, in numerous locations. The number of class members is so large that joinder of all its members is impracticable.

   (b) The class satisfies the commonality requirement of Rule 23(a) because there are questions of law and fact common to the Class and these questions have common answers. Common legal and factual questions include, but are not limited to, (1) whether any of Morris' cash or cash equivalents should have been included when assessing the fair

9

market value of the ESOP shares during the 2022, 2023, and 2024 valuations; (2) what the fair market value of ESOP shares should have been for shares redeemed based on the 2022, 2023 and 2024 valuations; and (3) the appropriate relief for the opportunity losses arising from the deficient benefits provided to Class members.

(c) The class satisfies the typicality requirement of Rule 23(a) because Plaintiffs' claims are typical of the claims of the members of the Class because Plaintiffs' claims, and the claims of all Class members, arise out of the same conduct, policies and practices of Defendants as alleged herein, and all members of the Class are similarly affected by Defendants' wrongful conduct. Plaintiffs all received less than the fair market value for their shares in violation of ERISA and the Plan Document.

(d) The class satisfies the adequacy requirement of Rule 23(a). Plaintiffs will fairly and adequately represent the Class and have retained counsel experienced and competent in the prosecution of ERISA class action litigation. Plaintiffs have no interests antagonistic to those of other members of the Class. Plaintiffs are committed to the vigorous prosecution of this action and anticipate no difficulty in the management of this litigation as a class action.

(e) Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of

10

the Class would create a risk of establishing incompatible standards of conduct for Defendants. Class action status also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

(f) In the alternative, certification under Rule 23(b)(2) is warranted because Defendants acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.In the alternative, certification under Rule 23(b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members, and class action treatment is superior to the other available methods for the fair and efficient adjudication of this controversy.

## COUNT I:

## Recovery of Plan Benefits

## Pursuant to 29 U.S.C. § 1132(a)(1)(B)

40. Plaintiffs re-allege, as if fully set forth herein, each and every prior allegation contained in paragraphs 1 to 39 contained above, and further allege the following against Defendants:

41. Under the terms of the Plan, Plaintiffs were entitled to sell their shares of Morris at the "fair market value as of the Valuation Date." See, Ex. 1, §§ 2.48, 5.02, 5.03, 5.04.

42. The "fair market value" must be determined "in good faith" and reflect Morris' "condition and prospects, financial and otherwise, generally used in the determination of the fair market value of corporate stock of comparable public or private companies engaged in the same or similar industries." Ex. 1, § 5.03.

43. By entirely ignoring Morris' extremely large cash holdings when determining the price to value Plaintiffs' shares, Plaintiffs did not receive the benefit they were entitled to when selling their shares.

44. Defendants failed to provide benefits due under the terms of the Plan, and this denial of benefits to Plaintiffs constitute a breach of the Plan.

45. The decision to deny benefits was incorrect under the terms of the Plan.

46. The decision to deny benefits and the decision-making process was arbitrary and capricious, if it existed at all.

47. The decision to deny benefits was not supported by any evidence on the record, let alone substantial evidence. Meanwhile, Plaintiffs provided ample evidence, including an expert valuation report, that the share price they received was far below the fair market value of their shares.

48. As a direct and proximate result of the aforementioned conduct of the Defendants in failing to provide benefits due under the Plan, Plaintiffs have been

12

Case 5:26-cv-00065-FL   Document 1   Filed 02/06/26   Page 12 of 14

damaged in the amount equal to the amount of benefits to which they would have been entitled under the Plan.

49. As a direct and proximate result of the aforementioned conduct of the Defendants in failing to provide benefits for Plaintiffs as provided for by the Plan, Plaintiffs have suffered damages under the Plan, plus interest and other damages, for a total amount to be determined.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request this Honorable Court grant the following relief:

(A) A finding in favor of Plaintiffs and against Defendants;

(B) Damages in the amount of the fair market value of their shares less the compensation already received for their shares, plus an amount to make whole Plaintiffs for the lost investment opportunity from the underpayment;

(C) Prejudgment and post-judgment interest;

(D) Plaintiffs' reasonable attorney fees and costs; and

(E) Such other relief as this Court deems just and proper.

Dated: February 6, 2026

Respectfully submitted,
*/s/ Alan B. Felts*
J. Nathan Duggins III
N.C. State Bar No. 22029
Alan B. Felts
N.C. State Bar No. 42826
**TUGGLE DUGGINS P.A.**
400 Bellemeade Street, Ste. 800
Greensboro, NC  27401
Telephone: (336) 378-1431
Facsimile: (336) 274-6590
AFelts@tuggleduggins.com
NDuggins@tuggleduggins.com

Gregory Y. Porter (special appearance forthcoming)
Mark G. Boyko (special appearance forthcoming)
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson Street, NW, Ste. 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
gporter@baileyglasser.com
mboyko@baileyglasser.com

*Attorneys for Plaintiffs*